I1PQMIDc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA
3
                v.                          18 CR 36 (JPO)
4                                           Conference
    DAVID MIDDENDORF, ET AL.
5
                    Defendants
6   ------------------------------x

7                                           New York, N.Y.
                                            January 25, 2018
8                                           11:10 a.m.

9
    Before:
10
                        HON. J. PAUL OETKEN
11

12                                          District Judge

13

14                      APPEARANCES

15  GEOFFREY S. BERMAN
         Acting United States Attorney for the
16       Southern District of New York
    AMANDA K. KRAMER
17  REBECCA G. MERMELSTEIN
    JESSICA GREENWOOD
18       Assistant United States Attorney

19  PETRILLO KLEIN & BOXER LLP
         Attorneys for Defendant Middendorf
20  NELSON A. BOXER
    AMY R. LESTER
21

22  BRUCH HANNA LLP
         Attorney for Defendant Middendorf
    GREGORY S. BRUCH
23

24  WIGGIN & DANA LLP
         Attorney for Defendant WHITTLE
    JAMES H. BICKS
25

I1PQMIDc

1

2                              APPEARANCES CONTINUED

3

ORRICK HERRINGTON & SUTCLIFFE LLP
4          Attorney for Defendant Britt
ROBERT M. STERN
5   MELINDA L. HAAG
MATTHEW R. SHAHABIAN
6

7   THOMPSON HINE LLP
         Attorney for Defendant Holder
8   NORMAN A. BLOCH
EMILY J. MATHIEU
9

10  BROWN RUDNICK
         Attorneys for Defendant Wada
11  JUSTIN WEDDLE
STEPHEN COOK
12

13

14

15

16

17

18

19

20

21

22

23

24

25

I1PQMIDc

1          (In open court; case called)

2          THE COURT:  This is the first appearance of the

3   defendants before me in this case on a five-count indictment.

4   I'm Judge Oetken.  I'm the district judge who's been assigned

5   to this case.  It appears all five defendants are present with

6   their lawyers.

7          I just want to say one thing for the record, which is

8   that I worked both with Mr. Boxer and Mr. Bruch when I was an

9   in-house counsel at Cablevision before I became a judge about

10  six and a half years ago.  They were each at prior law firms, I

11  believe which were retained as outside counsel by the company

12  in connection with certain litigation and regulatory matters.

13  They were among numerous professional relationships I had with

14  outside counsel in my prior job.  I do not think there is

15  anything about either that creates any sort of conflict, but I

16  did just want to say that for the record.

17         So I will ask, Ms. Kramer.  First, has each defendants

18  had an initial appearance before a magistrate judge?

19         MS. KRAMER:  Yes, they have, and the two defendants

20  who were arrested and presented in this district were also

21  arraigned.

22         THE COURT:  So the other three have not been

23  arraigned?

24         MS. KRAMER:  Correct, your Honor.

25         THE COURT:  Am I correct it's Mr. Middendorf

I1PQMIDc

1    Ms. Holder and Mr. Wada that still need to be arraigned?

2               MS. KRAMER:  Yes, your Honor.

3               THE COURT:  OK.  We will start with the arraignment of

4    those three defendants.

5               I'll start with Mr. Middendorf.

6               Mr. Middendorf, have you seen a copy of the

7    indictment?

8               DEFENDANT MIDDENDORF:  Yes, I have, your Honor.

9               THE COURT:  Have you discussed the indictment with

10   your lawyer?

11              DEFENDANT MIDDENDORF:  Yes, I have, your Honor.

12              THE COURT:  Do you understand the nature of the

13   charges against you?

14              DEFENDANT MIDDENDORF:  Yes, I do, your Honor.

15              THE COURT:  You have the right to have me read the

16   indictment publicly or you can waive that right.  Do you wish

17   to waive public reading of the charges?

18              DEFENDANT MIDDENDORF:  Yes, your Honor.

19              THE COURT:  How do you wish to plead at this time?

20   Guilty or not guilty.

21              DEFENDANT MIDDENDORF:  Not guilty, your Honor.

22              THE COURT:  Thank you.

23              Ms. Holder, would you please stand.

24              Have you seen a copy of the indictment in the case?

25              DEFENDANT HOLDER:  Yes, your Honor.

I1PQMIDc

1          THE COURT:  Have you discussed the indictment with

2     your lawyer?

3          DEFENDANT HOLDER:  Yes, your Honor.

4          THE COURT:  Do you understand the nature of the

5     charges against you?

6          DEFENDANT HOLDER:  Yes, your Honor.

7          THE COURT:  Again, you have a right for me to read it

8     or you can waive public reading.  Do you wish to waive?

9          DEFENDANT HOLDER:  Yes, your Honor.

10          THE COURT:  How do you wish to plead at this time?

11     Guilty or not guilty.

12          DEFENDANT HOLDER:  Not guilty.

13          THE COURT:  Mr. Wada, please stand.

14          Have you seen a copy of the indictment?

15          DEFENDANT WADA:  Yes, your Honor.

16          THE COURT:  Have you discussed it with your lawyer?

17          DEFENDANT WADA:  Yes, your Honor.

18          THE COURT:  Do you understand the nature of the

19     charges against you?

20          DEFENDANT WADA:  Yes, your Honor.

21          THE COURT:  Do you also waive public reading of the

22     charges at this time?

23          DEFENDANT WADA:  Yes, I do, your Honor.

24          THE COURT:  How do you wish to plead at this time?

25     Guilty or not guilty.

I1PQMIDc

1    DEFENDANT WADA:  Not guilty, your Honor.

2    THE COURT:  Thank you very much.  That completes the

3    arraignment of the other three defendants.

4    We'll turn to scheduling in this case, and I'd like to

5    start by asking counsel for the government if you could please

6    describe generally the categories of discovery and any timing

7    that you propose for production.

8    MS. KRAMER:  Certainly, your Honor.

9    The discovery in this case relative to white collar

10   cases is not particularly voluminous.  It generally consists of

11   the following categories:  First, electronic devices and

12   accounts for which the government obtained search warrants,

13   including cell phones and certain email accounts used by the

14   defendants, and storage devices and computers obtained from

15   defendant Cynthia Holder's home, as well as consent searches of

16   additional computers provided by Cynthia Holder and Brian

17   Sweet.

18   In addition to those devices and accounts, there are

19   approximately 30,000 documents that were produced by KPMG

20   together with much smaller productions from the PCAOB, the SEC

21   and other sources.

22   With respect to documents, we do have some document

23   requests outstanding, and with respect to anything we receive

24   going forward, we'll produce it expeditiously.

25   We have a proposed schedule for discovery contingent

I1PQMIDc

1    on your Honor's execution of a protective order, which I will

2    turn to in a moment.  The schedule that we have planned to

3    produce according to is for the defendants whom we've obtained

4    an email search warrant we've already provided those defendants

5    with the entire contents of their own account.  Prior to the

6    conference today, we've provided that to them as well as some

7    other individual items including the indictment and the marshal

8    intake form.  We plan to also provide emails from those

9    accounts that are identified as responsive to the search

10   warrants to all defendants as part of the larger productions to

11   come.

12            So we propose two phases:  First, the documents that

13   are already in our possession, we would provide those to

14   defense counsel within two weeks, which is February 8.  We

15   think that can be done on DVDs, but we'll let defense counsel

16   know.  I've just been informed that in fact it will not fit on

17   DVDs, so we will let defense counsel know the size of the thumb

18   drive or hard drive we need in order to provide those copies.

19   And that production will include the documents we've described

20   produced by KPMG, the SEC, the PCAOB, some financial

21   institutions, an email and telephone service providers and

22   probably a couple of other small productions, as well as the

23   result of email search warrants and text messages that were

24   extracted from the cell phone search warrants.

25            Phase two will involve the remainder of the items from

I1PQMIDc

1    the searches of electronic devices that I've already described,

2    and that production will be made no later than four weeks from

3    today, which is February 22.

4            If the defendants want, we can give them a complete

5    copy of their own personal cell phones that were searched.

6    They will have to provide us with a hard drive, and we can let

7    them know what size that is.  So that's the plan for making a

8    production.

9            Turning to the protective order, we provided defense

10   counsel with a draft protective order.  There were no

11   objections from defense counsel except for counsel for

12   defendant Jeffrey Wada.  We've addressed those objections in a

13   draft that was sent to everybody as well as one additional

14   change that we've discussed with counsel for Wada this morning

15   that we have not had an opportunity yet to provide to all

16   defense counsel, which I will say for defense counsel, though I

17   know your Honor hasn't seen the proposed order yet, but it

18   requires the execution of the protective order and an agreement

19   to be bound by its terms only by individuals who are provided

20   copies of the confidential material, not only who are shown

21   copies of the confidential material.  And with that change,

22   we've been informed that defendant Wada no longer has any

23   objections.  So we'd like to pass this up for your Honor's

24   consideration and for entry of the order at which time we'll be

25   able to begin producing discovery on the schedule that we have

I1PQMIDc

1    proposed.

2                THE COURT:  OK.

3                MS. KRAMER:  May I approach, your Honor?

4                THE COURT:  Yes.  Just to confirm, is this now agreed

5    upon?

6                MR. WEDDLE:  Yes.  On behalf of defendant Wada, yes.

7                THE COURT:  Does any of the other counsel for

8    defendants have any objection to the language?  Have you seen

9    it or not?

10                MR. BOXER:  We've seen it.  I have no objection.  I

11   would like to raise a comment to discovery after you've

12   executed the order.

13                THE COURT:  Sure.

14                MR. STERN:  On behalf of Mr. Britt, we have not seen

15   the final changes, but I had no objection to a prior iteration

16   that we did see.

17                MR. BICKS:  The same for us, your Honor, for Thomas

18   Whittle.

19                MR. BLOCH:  For Ms. Holder, the same, Judge.

20                THE COURT:  All right.

21                Just to be clear, you have seen -- you have not seen

22   the final version?

23                MR. BLOCH:  I have not.

24                MS. KRAMER:  That's fine, your Honor.  We can send it

25   to defense counsel.  Everyone has seen the entirety of the

I1PQMIDc

1    order in its prior form which required execution of the

2    protective order by anyone who was shown a copy of the

3    confidential material.  We have made the terms more favorable

4    to defense counsel so that the protective order need to be

5    signed only by individuals who receive copies of it.  That's

6    the only change, but we're happy to disseminate a copy

7    immediately upon our return to our offices after this

8    conference.

9              THE COURT:  That's fine.  However you want to do it as

10   long as you communicate that the final version, that there are

11   no objections to it that I need to hear you on.  If you've

12   communicate that through my deputy, Mr. Hampton, then I'll go

13   ahead and execute it, assuming there is nothing to discuss

14   about any disputes.  And you can do that informally through

15   Mr. Hampton.

16             I would like to hear -- essentially we are here for

17   scheduling, and we can do it a couple of ways.  You've heard

18   about the government's proposal for discovery.  I'll hear in a

19   minute even more, but just as an overview we can do it a couple

20   ways.  Some judges set the trial date at the first conference.

21   I am happy to do that if the parties agree that that's how you

22   want to do it.  In a case with a lot of discovery, I don't

23   require that.  I'm happy to get an anticipated schedule for

24   when you will have had a chance you think to review discovery

25   and have a conference at that point to set any schedule for any

I1PQMIDc

1    motions.

2            That having been said, I'll start with the government.

3    Do you have a view on that?

4            MS. KRAMER:  Yes, your Honor.  We would like a trial

5    date today.  We would propose mid-October if the Court is

6    available, which would give more than enough time for defense

7    counsel to receive and review the discovery on the schedule

8    we've laid out for any motions to be filed and adjudicated.

9            We have noticed that some defense counsel have made

10   statements in the press that call into question whether there

11   is an actual crime here.  We are aware of the legal arguments

12   that we believe are behind such statements.  We have considered

13   and rejected them, so we are also eager to get a schedule for

14   any such motion so we that can submit our papers promptly and

15   have that issue resolved.

16           THE COURT:  I'll start with Mr. Boxer.

17           MR. BOXER:  Your Honor, in principle, that date is OK

18   with the caveat that we haven't seen the discovery, and the SEC

19   has brought an administrative proceeding at least against our

20   client and some of the other defendants, which I understand

21   will be tried within 120 days from service.

22           So whether that will still be a live proceeding in the

23   future is unknown, and I accept the assistant's representation

24   about discovery, but until we get our hands and eyes on it,

25   it's still unknown to us.  So with the ability to come back

I1PQMIDc

1   because it's more than we expected, mid-October sounds fine.  I

2   just don't want to commit in stone to that without knowing how

3   those two factors play out.

4            THE COURT:  Mid-October trial date.

5            MR. BOXER:  Yes, I understand.

6            THE COURT:  Yes.

7            MR. BOXER:  But if in a month discovery is more than

8   we can handle in that period of time or we're litigating with

9   the SEC, I would ask for permission to be able to come back and

10  revisit that trial date.

11           THE COURT:  OK.

12           MS. KRAMER:  Your Honor, to the extent the SEC

13  litigation is a concern for defense counsel, obviously we don't

14  know what the ruling ultimately will be, but we intend to file

15  a motion to stay that administrative proceeding and expect to

16  submit our papers on that this week.  We've sought consent from

17  counsel for such a stay.  We haven't received it yet since I

18  think the action was just filed on Monday and defense counsel

19  wanted time to consider it, but we will be filing that motion

20  today.

21           THE COURT:  Do you have a particular date in October

22  that you have in mind?

23           MS. KRAMER:  The middle or later in October, your

24  Honor, to avoid the impact of some of the holidays that fall in

25  late September.

I1PQMIDc

1    THE COURT:  What's your best estimate of length of

2    trial?

3    MS. KRAMER:  I think our best estimate, your Honor, is

4    three weeks.

5    THE COURT:  So I guess the proposal I'll put out there

6    is October 15 for trial date.  I'd like to hear in addition to

7    Mr. Boxer from any counsel who wants to weigh in on this

8    discovery schedule generally, just so you all have a chance.

9    MR. BOXER:  I'm sorry, your Honor.  I did have a

10   comment on discovery if I may be heard.

11   THE COURT:  Sure.

12   MR. BOXER:  I may have misheard Ms. Kramer when she

13   was going through the items, but our request is that wherever

14   the government served a search warrant or subpoena on anyone

15   for the contents of their electronic device, that we be

16   produced that content.

17   I thought I heard in one instance her represent that

18   the results of those searches would be provided to the

19   possessor of the device, but our request is that any evidence

20   taken in that manner be produced to us in discovery.  I'm not

21   sure, I may have misunderstood, but that's what I might have

22   heard.

23   MS. KRAMER:  Let me clarify to avoid any confusion.

24   Items that are responsive to a search warrant will be produced

25   to defendants in the case.  We cannot produce the entirety of

I1PQMIDc

1     the device that includes material not responsive to the search

2     warrant to anyone other than the owner of that device.  So we

3     will be producing the entirety of a cell phone, for example, to

4     the defendant who owned that cell phone.  The responsive items

5     will be produced to everybody.

6                 THE COURT:  Does that answer it?

7                 MR. BOXER:  It kind of does and kind of doesn't

8     because I think if the government seized the non-responsive

9     material, we're entitled to it.  We don't have to resolve this

10    here this morning, but it sounds like an issue to be discussed

11    further and maybe it will be part of the motion practice, but

12    sounds like I heard it correctly, but I didn't appreciate the

13    legal distinction that was being made, but that's our position

14    and we'll see where it goes.

15                THE COURT:  Feel free to confer --

16                MR. BOXER:  Absolutely.

17                THE COURT:  -- and if you need me to resolve anything,

18    you can raise it appropriately at the appropriate time.

19                MR. BOXER:  Thank you, your Honor.

20                THE COURT:  Anyone else want to address scheduling

21    and/or discovery issues?

22                MR. WEDDLE:  Your Honor, on behalf of Mr. Wada, I

23    would just put in a vote for the second option that your Honor

24    articulated at the outset, which was to reconvene for our

25    conference after we've had the discovery in hand for some

I1PQMIDc

period of time so that we can make a more educated estimate
about what we need and what it looks like.

            THE COURT:  I think maybe I'd like to do both.  Maybe
put the October 15 date on the calendar with the understanding
that we will revisit at a conference in 30, 60, whatever number
of days where we will come back and talk about the status of
your production, review of discovery, and whether there are any
motions contemplated.

            Anyone else?

            MR. STERN:  That approach is fine with us, your Honor.

            MR. BICKS:  Fine with us as well, your Honor.

            MR. BLOCH:  Solomonic, your Honor.

            THE COURT:  All right.  I'm just trying to think.  Why
don't we go ahead and put October 15 as the anticipated trial
date.  I'll assume to set aside three weeks for that.  We will
set a conference date where I will get an update on status of
production, any disputes with respect to production discovery,
and whether you are in a position to set a schedule for any
motions to be filed.  What's a good amount of time?  30, 45, 60
days?

            MS. KRAMER:  Well, so two things.  First, your Honor,
with respect to the length of trial, I think given the number
of defendants presently in the case, if your Honor has the
capacity to allow for more time for the trial, I think our case
won't take longer than three weeks, but you could have several

I1PQMIDc

1    defense cases.

2              THE COURT:  We can put four weeks on the calendar.

3              MS. KRAMER:  To be safe.

4              With respect to motion schedules, obviously there are

5    motions that will be based on counsel's review of discovery

6    that they have not yet received.  To the extent that there is a

7    present intention to file a motion to dismiss the indictment,

8    it may make sense to set a schedule for that and deal with the

9    motions in staggered form rather than waiting 60 days to have

10   motions filed, if any, if it's purely on a legal ground.

11             THE COURT:  Does anyone want to propose a motion to

12   dismiss the indictment?

13             MR. BOXER:  I think there will be -- we will be moving

14   to dismiss the indictment.  I think counsel accurately

15   reflected what I'll call the novelty of some of the theories

16   presented here.  So be will moving for that motion.

17             THE COURT:  Would you be able to do that on a schedule

18   we could anticipate now, say, like a month from now?

19             MR. BOXER:  Please, I don't want to occupy all the

20   discussion.

21             MS. HAAG:  I would suggest that's a little bit

22   aggressive.  I would like personally to have a chance to review

23   the discovery in advance of filing motions, so I would suggest

24   and ask for a little bit additional time; not 30 days from now,

25   maybe 60 days from now.

I1PQMIDc

| | |
|---|---|
| 1 | THE COURT:  Why don't we say 60 days from now? |
| 2 | Actually, I'll give you a date certain, that's always safer. |
| 3 | Why don't we make it March 30 for any motions that go to the |
| 4 | indictment, and if you are in a position to do discovery |
| 5 | related motions or motions to suppress, you could do those as |
| 6 | well.  We will set a conference and if discovery is still being |
| 7 | reviewed and you need additional time, we can do that.  Why |
| 8 | don't we set a conference a couple weeks before that to check |
| 9 | in, perhaps March 15. |
| 10 | Does anyone have any issue with March 15, which is a |
| 11 | Thursday? |
| 12 | MS. MERMELSTEIN:  I have a trial defendant being |
| 13 | sentenced that morning.  Any time in the afternoon is fine. |
| 14 | THE COURT:  If you'd rather we do Mondays and Fridays, |
| 15 | I don't know if that's better for travel purposes for the |
| 16 | lawyers of the defendants.  It's all the same to me. |
| 17 | MS. HAAG:  If it's all the same to everybody else, |
| 18 | your Honor, I'm coming from California generally, and midweek |
| 19 | is easier, actually, than Monday or Friday. |
| 20 | THE COURT:  Midweek?  How about March 15 in the |
| 21 | afternoon?  Any problems with that? |
| 22 | MS. KRAMER:  Not from the government, your Honor. |
| 23 | MS. HAAG:  No, your Honor. |
| 24 | THE COURT:  Hearing none, we will have a conference on |
| 25 | March 15 at 2:30 p.m. in this courtroom. |

I1PQMIDc

1            MR. WEDDLE:  On behalf of Mr. Wada, may I ask that he

2      be excused from that conference?  It will be mostly a

3      scheduling conference.

4            THE COURT:  That's fine if you want to waive.

5      Mr. Wada, you understand you have a right to be present for all

6      conferences including scheduling conferences?

7            DEFENDANT WADA:  Yes, your Honor, I'm aware.

8            THE COURT:  But you're OK with -- you want to

9      voluntarily waive that right to the conference that we've

10     discussed?

11           DEFENDANT WADA:  Yes.

12           THE COURT:  OK, that's fine.

13           Anything else anybody else needs to address?

14           MR. BOXER:  I have one issue, your Honor.  Cognitive

15     that your rules about Curcio hearing should be raised at the

16     first conference, my client as well as the three other

17     defendants were all employed by KPMG.  That fact we expect will

18     give rise to some need for some Curcio inquiry.  Just as an

19     example, I suspect some of the law firms that are represented

20     here today in the past may have done work for KPMG or are doing

21     work for KPMG, and there very well might be witnesses for KPMG

22     during the trial.

23           We've conferred amongst ourselves, and there seem for

24     a variety of possibilities that could create a need for a

25     Curcio inquiry.  I know your Honor's rules require it to be

I1PQMIDc

1    disclosed at the first conference, I'm doing that.  But I think

2    what we think makes sense is for us to put our heads together

3    and sit down with the government because there may be aspects

4    of each of our clients regarding the evidence that they intend

5    to present against each of our clients that they raise issues

6    we can't consider.  So we ask we be given a little time to do

7    that and come back individually to the Court for appropriate

8    hearings.

9            THE COURT:  That's fine.  Thank you for raising it.

10   We can address that at the next conference or if you need to

11   withdraw after conferring with the government, submit a

12   proposal for addressing it, I'm happy to do that at the

13   appropriate time.

14           MR. BOXER:  Thank you, your Honor.

15           THE COURT:  Anything else anyone wanted to address?

16           MS. KRAMER:  Two very brief things, your Honor.

17           First, at the initial appearance defendants Whittle

18   and Britt, the magistrate didn't include on the disposition

19   sheet, although he said it in court, that the defendants were

20   not only permitted to travel to the enumerated states and

21   districts but also to all points in between for purposes of

22   traveling.  If your Honor could essentially modify the bail to

23   permit them to travel in between so they may drive from one

24   location to the other.  We were not able to get it corrected

25   that day.  We were hoping you could do that, your Honor.

I1PQMIDc

1          THE COURT:  Yes.  I assume I could do that orally.

2     That application is granted.  The conditions of bail are

3     modified to not only permit the destination stated but all

4     points in between for travel.

5          MS. KRAMER:  Lastly, your Honor, the government moves

6     to exclude time from calculation under the Speedy Trial Act in

7     the interest of justice so that defense counsel have an

8     opportunity to review the discovery that the government will be

9     producing over the course of the next four weeks and onward and

10    perfect any motions they wish to bring to the Court's

11    attention.

12         THE COURT:  All right.  I'd like to hear from counsel

13    for the defendants on that.  Just so you all know, to the

14    defendants, you probably know from talking to your lawyers

15    there's something called a Speedy Trial Act in the federal

16    system which requires essentially with some exceptions within

17    70 days you have the right to have a trial from the initial

18    appearance before a judge, but there are various exceptions to

19    that.  And in the interest of justice there is a catchall

20    exception particularly when there's a voluminous amount of

21    discovery, you need time to review that discovery for motions,

22    et cetera.  The government has asked for an exclusion of the

23    time in the interest of justice.  I'd like to ask each of you

24    through your counsel whether any of you has objection to that

25    request.

I1PQMIDc

1          MR. BOXER:  No objection, your Honor.

2          MR. BICKS:  No objection, your Honor.

3          MR. STERN:  No objection, your Honor.

4          MR. BLOCH:  No objection.

5          MR. WEDDLE:  I may have misheard it, but we're

6     excluding time to the conference date of March 15?

7          THE COURT:  Did we say conference date or trial date?

8          MS. KRAMER:  I would just assume exclude time through

9     the trial date, so it is not something we need to revisit when

10    we appear again, but we can do it again at the conference if

11    there's an issue excluding it to trial.

12         MR. BOXER:  The latter would be my request that we

13    exclude time to the conference date, and it may very well be

14    we'll have a foundation for a larger exclusion at that time,

15    but we would consent to the next conference date.

16         THE COURT:  That's fine.  We're talking about through

17    the conference date, which is, what did I say, be March 15.

18         MR. WEDDLE:  On that basis, no objection from

19    defendant Wada.

20         MR. STERN:  No objection.

21         MR. BICKS:  No objection, your Honor.

22         MR. BLOCH:  No objection.

23         THE COURT:  The application is granted, and I exclude

24    time under the Speedy Trial Act to March 15, 2018.  I find the

25    ends of justice served by granting this additional time

I1PQMIDc

1    outweigh the interest of the public and each of the defendants

2    in a speedy trial.  Given the time needed for production of

3    discovery and review by each of the defendants and their

4    counsel, the time is excluded under 18 U.S.C. 3161(h)(7)(A) to

5    March 15, the date of the next conference.  I will see you all

6    on that date.

7              Anything further from anyone?

8              MR. BLOCH:  Yes, your Honor, with respect to the bail

9    travel restrictions, if we do have to go forward with the SEC

10   everyone has to be in Washington D.C. for that, and that's not

11   included on our clients.  And, in addition, if we're going to

12   raise -- I was going to raise with the government a notion of

13   just making it nationwide as to restriction so we don't have to

14   come back every time somebody has to travel out of state, if

15   that's a problem for the government.

16             THE COURT:  Do you have a position on that yet?

17             MS. KRAMER:  I think we'd like to talk to the pretrial

18   services officers as well and formulate our position on that

19   and we can get back to defense counsel.  We have been, I think,

20   relatively reasonable in terms of allowing for travel from, you

21   know, to and from states where defendants have a reason to be,

22   and I think we'd generally prefer to stick to that model.  Of

23   course, I have no objection to expanding it to Washington D.C.

24   in the event counsel and their clients have to appear in the

25   SEC action.

I1PQMIDc

1              THE COURT:  I'll defer on that until the government

2      has had a chance to discuss with you and the pretrial services

3      officer.  Any bail modification requests can just be submitted

4      to Mr. Hampton.  Make sure you have his email or on the docket

5      as a request for a bail modification and make sure you consult

6      with pretrial services officers and counsel for the government

7      and indicate their position on any such request.

8              MR. BLOCH:  Thank you, your Honor.

9              THE COURT:  Anything further from anyone?

10             MS. KRAMER:  No, your Honor.  Thank you.

11             THE COURT:  Thank you very much.

12             (Adjourned)