**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-cr-00036 (JPO) |
| Plaintiff, | **DEFENDANT JEFFREY WADA'S MOTION TO DISMISS INDICTMENT** |
| v. | |
| JEFFREY WADA, *et al.* | ECF CASE |
| Defendants. | |

Defendant Jeffrey Wada respectfully submits this Motion to Dismiss the Indictment pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure.  As grounds, Mr. Wada states as follows:

## I.    INTRODUCTION AND JOINDER

The government alleges that Defendant Jeffrey Wada violated the conditions of his employment with the Public Company Accounting Oversight Board ("PCAOB")—a private, nonprofit corporation—when he allegedly shared confidential PCAOB information with a former PCAOB colleague employed by KPMG.  From those allegations, the government has crafted an Indictment alleging that Mr. Wada conspired to *defraud the United States*, to wit, *the SEC* (Count 1); conspired to commit wire fraud, although the government does not state *who* or *how* Mr. Wada conspired to defraud (Count 2); and *defrauded* the PCAOB by giving Defendant Cynthia Holder confidential PCAOB information (Counts 4 and 5).

The Indictment should be dismissed because the facts alleged by the government are insufficient to support the charges against Mr. Wada.  In support of this Motion, Mr. Wada joins and adopts the arguments contained in the Joint Motion to Dismiss filed by Defendants David Middendorf , Thomas Whittle, and David Britt (the "KPMG Defendants") (ECF docket items 56

and 57).  Mr. Wada incorporates by reference those arguments and respectfully requests that the Court consider those arguments, together with those made herein, in support of this Motion.

## II.   FACTUAL ALLEGATIONS RELEVANT TO MR. WADA

The Indictment alleges the following facts relating to Jeffrey Wada and pertinent to this motion.  Mr. Wada was a PCAOB employee from approximately 2004 through March 2017. (Indictment ¶ 23.)  At the time of his separation from the PCAOB, Mr. Wada was an Inspections Leader.  (*Id.*)  As a PCAOB employee, Mr. Wada was subject to the PCAOB's Ethics Code, including Ethics Code 9 ("EC 9"), which prohibits employees from disclosing "Nonpublic Information," a phrase broadly defined to include anything, regardless of sensitivity, learned in the course of employment that is not public information.  (*Id.* ¶ 13.)  According to the Indictment, PCAOB "employees are required to sign a formal offer letter, which states that employment is contingent on compliance with the PCAOB Ethics Code."  (*Id.* ¶ 14.)  In addition, Mr. Wada is alleged to have "received regular ethics trainings concerning, among other things, EC 9 and the prohibition on sharing confidential PCAOB information."  (*Id.* ¶ 23.)

For over three years, Mr. Wada and Defendant Cynthia Holder were colleagues at the PCAOB, until Ms. Holder accepted a position with KPMG.  (*Id.* ¶¶ 22-23.)  According to the Indictment, Mr. Wada remained in frequent contact with Ms. Holder following her departure from the PCAOB.  (*Id.* ¶ 58.)  During some of their conversations, Mr. Wada is alleged to have communicated to Ms. Holder purportedly confidential PCAOB information.  (*Id.*)  Specifically, in November 2015, Mr. Wada is alleged to have told Ms. Holder that he would be the team leader on a KPMG inspection in Japan, providing the dates of the inspection.  (*Id.*)  On another occasion that year, Mr. Wada is alleged to have told Ms. Holder that a different issuer had an "unidentified fraud risk" in connection with a different inspection.  (*Id.*)  According to the

Indictment, this information "permitted the engagement team to prepare a response [to the PCAOB] concerning why they had not identified such a risk." (*Id.*)  The Indictment does not allege that Mr. Wada expected to receive or received any benefit from Ms. Holder or KPMG in exchange for this information.

In 2016, Mr. Wada allegedly emailed Ms. Holder and another PCAOB employee about his frustration.  (*Id.* ¶ 62.)  Mr. Wada spoke by telephone with Ms. Holder shortly thereafter and, the Indictment alleges, orally provided Ms. Holder with a "confidential list of 12 Issuers audited by KPMG, that would be inspected by the PCAOB in 2016." (*Id.* ¶ 63.)  Based upon this information, the remaining defendants allegedly used this information to re-review the audit reports of the Issuers identified by Mr. Wada.  (*Id.* ¶¶ 62–71.)  The Indictment does not allege that Mr. Wada had any knowledge of the audit re-reviews conducted by the other defendants, nor does the Indictment allege that Mr. Wada expected to receive or received any benefit from Ms. Holder or KPMG in exchange for this information in 2016.

In 2017, Mr. Wada is alleged to have again provided Ms. Holder with a confidential list of issuers likely subject to inspection.  (*Id.* ¶¶ 73, 80–81.)  Mr. Wada is also alleged to have communicated with Ms. Holder throughout January 2017, expressing his frustration at his failure to obtain a promotion and his desire to obtain employment at KPMG.  (*Id.* ¶ 79.)  The Indictment makes no reference to any connection between these two different communications, or any reference to Mr. Wada expecting to receive or receiving any benefit from Ms. Holder or KPMG for providing this information in 2017.

III.    **ARGUMENT**

In addition to the arguments presented in the KPMG Defendants' Joint Motion to Dismiss, Mr. Wada argues as follows:

**A.  The Supreme Court's Decision in *Marinello* Supports Mr. Wada's Challenge to the Klein Conspiracy Charge**

Conspiracy to defraud cases "have a peculiar susceptibility to a kind of tactical manipulation which shields from view very real infringements on basic values of criminal law. Accordingly, conspiracy-to-defraud prosecutions are scrutinized carefully." *United States v. Rosenblatt*, 554 F.2d 36, 40 (2d Cir. 1977) (internal quotations and citations omitted).  The Memorandum of Law submitted by the KPMG Defendants explains why such scrutiny is particularly appropriate here.  The Supreme Court's recent decision in *Marinello v. United States*, 138 S. Ct. 1101 (2018) provides additional support for those arguments.

In *Marinello,* the Supreme Court reversed the Second Circuit's affirmation of a conviction under the so-called "omnibus" clause of Internal Revenue Code § 7212(a).  The omnibus clause forbids "corruptly . . . obstruct[ing] . . . the due administration of [the Internal Revenue Code]."  *See* 26 U.S.C. § 7212(a).  The government claimed that Marinello violated this omnibus clause when he destroyed business records prior to being notified that he would be audited by the IRS.  *Marinello*, 138 S. Ct. at 1105.  Marinello was convicted at trial, and the Second Circuit affirmed, holding that the omnibus charge did not require any "awareness of a particular [IRS] action or investigation."  *United States v. Marinello*, 839 F.3d 209, 221 (2d Cir. 2016) (citation omitted).

Judge Jacobs, joined by Judge Cabranes, wrote a strong dissent from the denial of *en banc* review.  In that dissent, Judge Jacobs criticized the conviction as "based on the most vague of residual clauses" that "cleared a garden path for prosecutorial abuse."  *United States v. Marinello*, 855 F.3d 455, 455 (2d Cir. 2017) (Jacobs, J., dissenting).  Judge Jacobs's dissent also

highlighted the Supreme Court's established track record of casting a "cold eye" towards "broad residual criminal statutes" and the court's preference "to cabin them."  *Id.* at 456.  Judge Jacobs added that a series of well-known Supreme Court reversals (involving a diversity of criminal statutes) were animated by "alarm about fair warning and overbreadth."  *Id.* at 456-57 (discussing *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005); *Skilling v. United States*, 561 U.S. 358 (2010); *Yates v. United States*, 135 S. Ct. 1074 (2015); *Johnson v. United States*, 135 S. Ct. 2551 (2015); and *McDonnell v. United States*, 136 S. Ct. 2355 (2016)).

In reversing the Second Circuit, the Supreme Court appeared to mirror Judge Jacobs's reasoning and held that the government must prove that the defendant was aware of a pending tax-related proceeding to be convicted under the omnibus clause.  *See Marinello*, 138 S. Ct. at 1109-10.  The Court noted that it has "traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'"  *See Marinello*, 138 S. Ct. at 1106 (quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995)).  *Marinello* also recognized that "to rely upon prosecutorial discretion to narrow the otherwise wide-ranging scope of a criminal statute's highly abstract general statutory language places great power in the hands of the prosecutor. . . . [I]t risks undermining necessary confidence in the criminal justice system."  *Id.* at 1108-09.

Here, the government's overbroad view of Section 371 underscores the Supreme Court's admonition to "exercise[] restraint" when assessing the reach of federal criminal statutes, and provides a case-in-point for the dangers of relying  upon "prosecutorial discretion" as a means of "drawing the line" somewhere that provides "fair warning" to the world as to the conduct that

5

may be subject to federal criminal prosecution.  By utilizing a judicially-created interpretation of

Section 371 that is already viewed with considerable skepticism (the so-called *Klein* conspiracy),

in combination with an aggressive attempt to use that statute to criminalize what is—at worst—a

theft of confidential information without any deceit, craft or trickery (discussed below), the

government has plainly overreached.  For these reasons and the reasons stated in the KPMG

Defendants' Memorandum of Law, Count 1 of the Indictment must be dismissed.

### B.  The Government's *Klein* Conspiracy Charge Fails to Allege a Fraud Upon the SEC

The government alleges in Count 1 that Mr. Wada engaged in conspiracy to "imped[e],

impair[], defeat[], and obstruct[] the lawful function of the SEC."  (Indictment ¶ 91.)  For such

conduct to fall within the scope of Section 371, the government must allege, *inter alia,* that such

action was undertaken "by deceit, craft or trickery, or at least by means that are dishonest."

*United States v. Klein*, 247 F.2d 908, 916 (1957) (quoting *Hammerschmidt v. United States*, 265

U.S. 182, 188 (1924)).  Here, the government has not alleged that Mr. Wada engaged in any

deceptive or deceitful action directed at the SEC, or made any statements to the SEC whatsoever

in furtherance of the alleged conspiracy.  The government's theory appears to be that Mr. Wada's

alleged violation of the conditions of his employment, including EC 9, somehow amounts to a

fraud upon the SEC.  The Second Circuit rejected just such an argument in *United States v.*

*Finnerty*, 533 F.3d 143 (2d Cir. 2008).

In *Finnerty*, the government charged a New York Stock Exchange ("NYSE") specialist

with three counts of securities fraud ("engag[ing] in a fraudulent and deceptive course of

conduct") by making "a profit for himself, and subordinat[ing] the interests of the trading public

below his own" through the use of a practice known as "interpositioning."  *Id.* at 146.

"Interpositioning" is prohibited by NYSE rules.  *Id.* at 145-46.  Following the jury's guilty

verdict, the district court entered a judgment of acquittal for the defendant based on the

government's failure "to prove a deceptive act within the meaning of the federal securities laws

. . . ."  *Id.* at 148 (quoting *United States v. Finnerty*, 474 F. Supp. 2d 530, 542 (S.D.N.Y. 2007)).

The government appealed, arguing that although "Finnerty made no misstatement" to the victims

of the purported fraud (the public), *id.* at 148, his conduct was deceptive:

> [T]he government argues, a reasonable jury could find that at least
> some customers were aware of the NYSE rules, would have
> expected Finnerty to comply with the rules, and were therefore
> deceived when Finnerty violated them. . . .  In essence, the
> government seeks to impose criminal liability based on a
> background assumption of compliance with NYSE rules.

*Id.* at 149 (emphasis added).

The Second Circuit began by noting that as "[b]road as the concept of 'deception' may be,

it irreducibly entails some act that gives the victim a false impression.  'Theft not accomplished

by deception . . . is not fraud absent a fiduciary duty.'"  *Id.* at 148 (quoting *In re Refco Capital*

*Markets, Ltd. Brokerage Customer Secs. Litig.*, No. 06 Civ. 643, 2007 WL 2694469, at *8

(S.D.N.Y. Sept. 13, 2007) (Lynch, J.)).  Here, as in *Finnerty*, "[t]he government has identified no

way in which [Mr. Wada] communicated anything to [the SEC], let alone anything false."  *Id.* at

148-49.  And just as "violation of an NYSE rule does not establish securities fraud in the civil

context [citation omitted], let alone in a criminal prosecution," neither can Mr. Wada's purported

violation of a PCAOB rule support a wire fraud charge that requires the same type of

misrepresentation or deception.  *Id.* at 151 ("[Defendant] may have known that [violating an

NYSE rule] was wrong within the context of his employment, and that it put him at risk

professionally; but an awareness of peril, a guilty conscience or an impulse to cover one's tracks

does not bespeak criminally fraudulent conduct within the context of the securities laws.").  The

government has not alleged that Mr. Wada conspired to interfere or obstruct the lawful function

of the SEC in any manner, much less through dishonest or deceptive means.  Accordingly, Count 1 of the Indictment must be dismissed.

### C.  The Charge of Conspiracy to Commit Wire Fraud (Count 2) Fails to Provide Sufficient Notice of the Charge to Be Met

The government is required to state each of the charges in the Indictment "with sufficient precision to inform [Mr. Wada] of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events."  *See United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (citations omitted).  Count 2 of the Indictment contains only generic statutory language and fails to "descend to particulars," *id.* (quoting *Russell v. United States*, 369 U.S. 749, 765 (1962)), making it impossible to determine the nature of the conspiracy alleged and the respective roles played by the conspirators therein. And while it is "generally sufficient that an indictment set forth the offense in the words of the statute itself," such generic language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."  *Hamling v. United States*, 418 U.S. 87, 117-18 (1974), *abrogation on other grounds recognized by United States v. Bailey*, No. 15-CR-6082G, 2016 WL 6995067 (W.D.N.Y. Nov. 29, 2016).

The other charges in the Indictment make at least an attempt to supplement the statutory language with facts sufficient to allow the Defendants the ability to determine the conduct that is alleged to be placed at issue by the charge.  (*See, e.g.*, Indictment ¶ 97 (Count 3) (supplementing generic statutory language with a description of the purported property alleged to have been misappropriated, how it was transmitted, and the source of the alleged duty of confidentiality attaching to the property); *id.* ¶ 99 (Count 4) (same); *id.* ¶ 101 (Count 5) (same).)  Thus, Count 2 identifies neither the victim of any fraud scheme (a critical omission because the other charges

flip-flop between claiming that the purported fraud's target was the SEC or the PCAOB), nor the

purported money or property sought to be obtained by the conspiracy, nor the purported

deceptive means of obtaining any money or property.  In other words, Count 2 of the Indictment

fails to satisfy the minimum pleading requirements and, accordingly, must be dismissed.

IV.      <u>CONCLUSION</u>

     For all of the foregoing reasons, and the reasons stated in the KPMG Defendants' Motion

to Dismiss, Mr. Wada respectfully requests that the Court grant this Motion and dismiss the

Indictment.


DATED:  April 13, 2018                Respectfully submitted,

                                             BROWN RUDNICK LLP


                                          By: <u>/s/ Stephen R. Cook     </u>
                                              Stephen R. Cook (admitted pro hac vice)
                                              BROWN RUDNICK LLP
                                              2211 Michelson Drive
                                              Seventh Floor
                                              Irvine, CA 92612
                                              Tel: (949) 752-7100
                                              Fax: (949) 252-1514
                                              scook@brownrudnick.com

                                              <u>/s/ Justin S. Weddle     </u>
                                              Justin S. Weddle
                                              BROWN RUDNICK LLP
                                              Seven Times Square
                                              New York, New York 10036
                                              Tel: (212) 209-4800
                                              Fax: (212) 209-4801
                                              jweddle@brownrudnick.com


                                              *Attorneys for Defendant Jeffrey Wada*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 13, 2018, I caused to be served a true and correct copy of *Defendant Jeffrey Wada's Motion to Dismiss Indictment* by filing through the Court's CM/ECF system, which sent notice electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Justin S. Weddle*
Justin S. Weddle

63000013 v3