# Exhibit D



*VIA EMAIL*

May 4, 2018

**Orrick, Herrington & Sutcliffe LLP**
51 West 52nd Street
New York, NY 10019-6142

+1 212 506 5000

**orrick.com**

**Melinda Haag**
E  mhaag@orrick.com
D  +1 415 773 5495
F  +1 415 773 5759

**Robert Stern**
E  rstern@orrick.com
D  +1 212 506-5000
F  +1 212 506-5151

Amanda Kramer
Rebecca Mermelstein
Jessica Greenwood
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
1 St. Andrews Plaza
New York, New York 10007

Re: *United States v. David Middendorf*, 18 CR 36 (JPO)
     Defendant David Britt's Requests for
     <u>Discovery, *Brady* and *Giglio* Material, and a Bill of Particulars</u>

Dear Mses. Kramer, Mermelstein, and Greenwood:

On behalf of David Britt, we write regarding (1) outstanding discovery to which Mr. Britt is entitled under Fed. R. Crim. P. 16, *Brady v. Maryland* and *Giglio v. United States*, and other relevant law; and (2) a request for a bill of particulars pursuant to Fed. R. Crim. P. 7(f). In addition to the standard discovery requests described below, we have identified, through our review of the discovery provided to date, a number of outstanding items. We ask that you direct particular attention to these outstanding items, described more fully in Attachment A to this letter.

In light of the Court's May 25 motions filing deadline, we ask that you provide the following by May 11, 2018: (1) a response to each request described below and in Attachments A and B; (2) materials responsive to each request; (3) a statement regarding what discovery remains to be produced; and (4) a date certain by which production will be complete. This timeline is necessary to allow us sufficient time before the Court's May 25 deadline to assess the need to file discovery motions.

A.    <u>Discovery to Which Mr. Britt is Entitled Pursuant to Fed. R. Crim. P. 16</u>

Mr. Britt is entitled to and requests production and disclosure of the following information and items pursuant to Fed. R. Crim. P. 16:

1.    All statements required to be disclosed to Mr. Britt pursuant to Fed. R. Crim. P. 16(a)(1)(A) and (B). Please specifically identify the substance of any relevant statement made by Mr. Britt whether before or after arrest in response to interrogation by any person then known by Mr. Britt to be a government agent that the government intends to use at trial.

2.    Pursuant to Fed. R. Crim. P. 16(a)(1)(D), a copy of any criminal record of Mr. Britt.



3.      All items described in Fed. R. Crim. P. 16(a)(1)(E).  Please specifically identify those items which the government intends to use in its case-in-chief at trial, Fed. R. Crim. P. 16(a)(1)(E)(ii), and which were obtained from, or belong to, Mr. Britt.  Fed. R. Crim. P. 16(a)(1)(E)(iii).  **We understand in particular that the government has not made a complete production of data obtained from Mr. Britt's cell phone, and we therefore ask that this production be completed forthwith.**

4.      All results, reports, experiments, and tests described in Fed. R. Crim. P. 16(a)(1)(F).  Please specifically identify any result, report, examination and/or test the government intends to use in its case-in-chief at trial.  Fed. R. Crim. P. 16(a)(1)(F)(iii).

5.      Pursuant to Fed. R. Crim. P. 16(a)(1)(G), a complete written summary of testimony to be presented by any person to be called by the government as an expert witness pursuant to Fed. R. Evid. 702, 703, or 705, including the witness' name, address, education, training, qualifications, opinions, the bases and the reasons therefor, and his or her qualifications.  **This would include any person currently or formerly employed by the U.S. Securities and Exchange Commission or the Public Company Accounting Oversight Board to be called for the purpose of providing expert testimony, and any expert witness called to opine regarding the KPMG work papers at issue in this matter.**

B.      <u>Discovery to Which Mr. Britt is Entitled Pursuant to *Brady* and *Giglio*</u>

        Pursuant to applicable federal constitutional provisions, Supreme Court and Second Circuit precedent, and Rule 3.8(b) of New York's Rules of Professional Conduct (applicable to federal prosecutors in the Southern District of New York pursuant to 28 U.S.C. §530B(a)), Mr. Britt is entitled to and requests the production and disclosure of the following information:

1.      All information in the possession, custody, or control of the government that is required to be disclosed under the Fifth and Sixth Amendments to the United States Constitution (*see*, *e.g.*, *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Bagley*, 473 U.S. 667 (1985), *United States v. Agurs*, 427 U.S. 97 (1976), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995)), and Rules 12(b)(4)(B), 16(a), and Rule 26.2 of the Federal Rules of Criminal Procedure.

2.      All documents, statements, agents' reports, and tangible evidence favorable to Mr. Britt on the issue of guilt and/or which affects the credibility of the government's case, any government witness, or Mr. Britt's participation in any of the charges in the indictment.  Impeachment as well as exculpatory evidence falls within Brady's definition of evidence favorable to the accused.  *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *United States v. Agurs*, 427 U.S. 97, 103-04 (1976).

3.      All documents and/or statements by any person interviewed by the government or by another entity and in the government's possession that are inconsistent with any factual allegation in the indictment, any legal theory on which the indictment is based, or any evidence the

2



government expects to introduce in its case in chief, including any impeachment material relating to potential government witnesses, such as:

      a.      Transcripts of testimony.

      b.      Witness statements.

      c.      FBI Forms 302 containing exculpatory (including impeachment) material.

      d.      The existence and substance of all plea agreements, promises of immunity, leniency, or preferential treatment made to potential witnesses.

      e.      Arrest and conviction records of potential witnesses.

4.      All statements as defined in the Jencks Act, 18 U.S.C. § 3500, containing *Brady* or *Giglio* information, including:

      a.      Written statements made by a government witness and signed or otherwise adopted or approved by him or her.

      b.      Stenographic, mechanical, electrical, or other recording, or a transcription of it, which is a substantially verbatim recital of an oral statement made by a witness to an agent of the government and recorded contemporaneously with the making of such oral statement.

      c.      A statement, however taken or recorded, or a transcription of it in any way made by a witness to a grand jury.

5.      Any evidence relevant to the bias or credibility of government witnesses (pursuant to *Giglio*), including but not limited to:

      a.      All documents, tangible objects, and other information relating or referring to, or constituting, containing, reflecting, or suggesting any bias or hostility of any witness for the government against the defendant(s).

      b.      Any and all promises or representations made to any person the government intends to call as a witness at the time of trial, including but not limited to, promises of non-prosecution, immunity, a lesser sentence, other types of leniency and/or favorable treatment.

      c.      Copies of any and all documents containing allegations of or evidencing fraud, deceit, perjury, or lack of credibility or candor concerning any person the government intends to call as witness.

      d.      The conviction record of all person(s) the government intends to call as witnesses at the time of trial, which convictions were punishable by death or imprisonment in excess of one year under the law under which the conviction was obtained, or which involved dishonesty or false statements, regardless of the punishment, within the meaning of Federal Rule of Evidence 609(a).



e.      Any and all records and information revealing prior misconduct or bad acts attributed to each witness within the meaning of Federal Rule of Evidence 404(b).

f.      All documents, tangible objects, or other information relating to the testimony of witnesses whom the government will call at trial, which reflect any contradiction or inconsistency with the anticipated trial testimony of that witness or other witnesses.

6.      Any information and/or evidence tending to impeach or impair the credibility of Mr. Sweet, other government witnesses, and/or other individuals mentioned in the indictment including, but not limited to:

a.      Plea agreements.

b.      Any promises, rewards, and/or inducements (financial or otherwise) offered, or any threats of criminal prosecution made, either directly or through counsel.

c.      Reports and/or records and/or handwritten notes reflecting statements to government agents and prosecutors, including SEC attorneys, or any other agents of the government, and any such documents which are in the possession (including constructive possession), custody, or control of the government.

d.      Reports and/or records reflecting bad acts and/or crimes committed.

e.      Any and all differences between information provided to the government by Mr. Sweet, another government witness, and/or another individual mentioned in the indictment, and information provided to the government in any proffers made by counsel.

7.      Any information and/or evidence showing or tending to show that Mr. Britt did not intend to defraud (a) the SEC (Count One) or (b) the PCAOB (Counts Two through Five).

8.      Any other information and/or evidence favorable to Mr. Britt, whether material or not, on the issue of guilt or punishment or which serves to impeach a government witness who will testify at trial.

C.      <u>Additional Discovery to Which Mr. Britt is Entitled</u>

1.      Please provide notice of any intention by the government to introduce evidence against Mr. Britt pursuant to Fed. R. Evid. 404(b), including a description of the nature of the evidence in sufficient detail to permit resolution of the issue of its admissibility before trial.

2.      Please provide the substance of any oral or written statements made by each of Mr. Britt's codefendants to prosecutors or their agents, to the SEC or its attorneys, to the PCAOB or its attorneys, or to KPMG or its attorneys — either in-house or outside counsel — which the government intends to introduce at trial so Mr. Britt can assert his rights pursuant to *Bruton v. United States, Crawford v. United States*, and their progeny.



3.      Please provide copies of any statements made or adopted by any alleged co-conspirator, codefendant, or agent of Mr. Britt regardless of whether the government intends to introduce those statements at trial.

4.      To avoid delays at trial, please provide at the earliest opportunity all witness statements, including rough notes, whether handwritten or electronically created, required to be provided to the defense pursuant to Fed. R. Crim. P. 26.2, 18 U.S.C. §3500, and applicable case law.

D.      <u>Request for Bill of Particulars Pursuant to Fed. R. Crim. P. 7(f)</u>

Pursuant to Fed. R. Crim. P. 7(f), and in order to adequately prepare for trial and to avoid surprise at trial, Mr. Britt requests particulars for the paragraphs in the indictment as indicated in Attachment B.

*    *    *    *    *    *

If there are items, material, or information in the government's possession which are responsive to the above requests, but which are not being produced due to an objection or for another reason, please provide the basis of the objection or other reason and provide a general description of the items, material, or information being withheld.

Mr. Britt joins in the discovery, *Brady*, bills of particulars, and other requests for pretrial disclosure made by his codefendants to the extent they are applicable to him.

Mr. Britt reserves the right to make additional requests if warranted by disclosures made by the government in response to the above requests.

Sincerely,

*/s/ Melinda Haag*

Melinda Haag
Robert Stern

cc: All Counsel (via email)



**Attachment A**

Mr. Britt is entitled at this time to all Rule 16 discovery, and, under the Constitution and *Brady v. Maryland* and its progeny, to the production of all exculpatory information.  The U.S. Attorneys' Manual specifically states that, "Exculpatory information must be disclosed reasonably promptly after it is discovered."  *U.S. Attorneys' Manual*, 9-5.001(D)(1).  And the Manual directs prosecutors to err on the side of disclosure: "The policy is intended to ensure timely disclosure of an appropriate scope of exculpatory and impeachment information so as to ensure that trials are fair."  *Id*. at 9-5.001(A).

The government also has an obligation to review statements that are currently being withheld from the defense under the guise of the Jencks Act, or as *Giglio* materials, for the purpose of identifying and producing *Brady* materials.  *See e.g. United States v. Rittweger*, 524 F.3d 171, n. 4 (2d Cir. 2008)  ("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under Brady – a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500.") (citation omitted).  We therefore request that the government review all Jencks Act and/or *Giglio* materials that have been withheld from discovery for this purpose.

 Based on our review of the discovery provided to date, we are concerned that the government has not been appropriately expansive in providing discovery to Mr. Britt.  The following are examples of where we believe *Brady* and Rule 16 materials will be found:

1. We believe the government received attorney proffers from counsel for various witnesses in this case.  To the extent counsel provided exculpatory information as to Mr. Britt, or information material to the preparation of his defense under Rule 16, that information should be provided in discovery at this time.  *See e.g. United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 161-165 (2d Cir. 2008) (holding that undisclosed attorney proffer notes were crucial to the defense); U.S. Attorneys' Manual, 9-5.002(B)(7) ("All potential *Giglio* information known by or in the possession of the prosecution team relating to non-law enforcement witnesses should be gathered and reviewed.  That information includes, but is not limited to: prior inconsistent statements (possibly including inconsistent attorney proffers).") (citing *Triumph Capital Group*).  It is our understanding that according to SDNY discovery and disclosure policy, proffers that contain discoverable information (such as *Brady*, *Giglio*, or Jencks Act information) are likely to be disclosed.

2. We understand that the government has provided different sets of discovery to different defendants in this case.  It is possible, however, that discovery provided to other



defendants and not to Mr. Britt contains information to which Mr. Britt is entitled, such as *Brady* or Rule 16 information. The government should review all discovery provided to other defendants and not to Mr. Britt for the purpose of identifying and producing all such materials.

3. Mr. Britt is entitled to all Rule 16, *Brady*, *Giglio*, and Jencks Act materials that exist in files at the SEC and the PCAOB. The U.S. Attorneys' Manual states that, "Prosecutors are encouraged to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes. Carefully considered efforts to locate discoverable information are more likely to avoid future litigation over *Brady* and *Giglio* issues and avoid surprises at trial." U.S. Attorneys' Manual, 9-5.002(A). *See also Kyles v. Whitley*, 14 U.S. 419, 437 (1995); *United States v. Avellino*, 136 F.3d 249, 25 (2d Cir. 1998) (The prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case . . ."); *U.S. v. Gupta*, 848 F. Supp. 2d 491, 495 (S.D.N.Y. 2012) ("[W]here the Government and another agency decide to investigate the facts of a case together . . . the Government has an obligation to review the documents arising from those joint efforts to determine whether there is *Brady* material that must be disclosed.").

Materials that should be obtained by the U.S. Attorney's Office from the SEC and PCAOB and produced in discovery include, but may not be limited to, any written policies, procedures, memoranda or the like that describe the extent and nature of the SEC's oversight of the PCAOB, and in particular with regard to KPMG and annual inspection reports. Discovery should also include annual inspection reports reflecting PCAOB inspections of KPMG in 2015, 2016, and 2017, and any follow up work that was done by the PCAOB or SEC regarding those reports. All communications between the SEC and KPMG with respect to their February 2016 meeting, as well as documents reflecting the substance of that meeting, should be produced. Any such documents from the SEC and PCAOB are discoverable under Rule 16(a)(1)(E) as material to preparing the defense.

Mr. Britt is also entitled to any discoverable information from PCAOB and SEC email accounts. For example, if there is evidence in Mr. Wada's PCAOB emails that show he acted alone in obtaining confidential PCAOB information, or that he was not part of a scheme with Mr. Britt or others, but rather acted out of anger towards his employer, such information would be exculpatory with respect to Mr. Britt and must be produced. There are undoubtedly other theories under which PCAOB and SEC emails should be produced in discovery.

7



In sum, we ask that the government review all relevant files, documents, email accounts, and the like held at the SEC and PCAOB and produce all discoverable materials from those files.

4.  Similarly, communications between DOJ/USAO and the SEC or PCAOB may contain discoverable information to which Mr. Britt is entitled under Rule 16, for example, if there were discussions regarding the extent and nature of the SEC's oversight of the PCAOB or other relevant matters.

5.  The government should likewise search PCAOB files for and produce all evidence concerning whether the PCAOB took steps to protect the confidentiality of its KPMG inspection lists, and if so, what steps it took.  Any such evidence would be material to Mr. Britt's defense and thus discoverable under Rule 16, and would be exculpatory information discoverable under *Brady*.

6.  Any evidence that Mr. Britt was not involved in obtaining lists of inspection targets from the PCAOB, which would include evidence that Mr. Britt did not know in advance that certain lists had been obtained from the PCAOB, or that Mr. Sweet and Ms. Holder were working together to obtain lists, or that Mr. Wada acted on his own in obtaining such information, would all be exculpatory information as to Mr. Britt and should be provided under *Brady* and its progeny as well as under Rule 16.  This would include emails from Mr. Wada's and Ms. Holder's PCAOB email accounts, rather than simply emails they may have sent to email account holders at KPMG or from personal email accounts.  And as described above, the government has an obligation to search PCAOB files and to produce all discoverable materials from those files.

7.  We assume that the government has interviewed current or former employees of the SEC and PCAOB regarding the extent and nature of the SEC's oversight of the PCAOB, and in particular with regard to KPMG.  We believe these interviews may contain material pertinent to Mr. Britt's defense, as well as exculpatory material, to the extent witnesses or written materials describe less than robust oversight by the SEC with respect to the PCAOB, either generally or with respect to KPMG.  Mr. Britt is entitled to these materials as well.

8.  Whether the government also has constructive possession of KPMG files related to this matter depends on the relationship of the government to KPMG's work.  If the government is taking the position that it does not have constructive possession of KPMG files, and therefore need not review those files, we request all communications between



KPMG and the U.S. Attorney's Office for the Southern District of New York, any other component of the Department of Justice, and the SEC regarding this matter, including but not limited to emails, text messages, notes of discussions, letters, memoranda, agendas, draft or final Deferred Prosecution or Non Prosecution Agreements, and the like for the purpose of determining whether a discovery motion should be brought.

9. The degree of the government's involvement in KPMG's internal investigation is material to assessing the constitutionality of the seizure and subsequent search of Mr. Britt's personal cell phone.  We therefore request all communications between KPMG and the U.S. Attorney's Office for the Southern District of New York, any other component of the Department of Justice, and the SEC regarding this matter, including but not limited to emails, text messages, notes of discussions, letters, memoranda, agendas, draft or final Deferred Prosecution or Non Prosecution Agreements, and the like for the purpose of determining whether a suppression motion should be brought.

10. The government also has constructive possession of any Pretrial Services or Probation reports concerning Mr. Sweet and an obligation to produce any discoverable information from those files.

11. If KPMG reached and conveyed to the government any conclusions that changes to the relevant KPMG work papers made in 2016 were immaterial, non-substantive, consistent with the relevant accounting rules, and/or nonexistent, that information is discoverable and should be provided.  If KPMG conveyed any information to the government that constitutes *Brady*, *Giglio*, or Rule 16 material, that too would have to be produced in discovery.

12. We believe that certain witnesses expressed to KPMG and/or the government their belief that any changes to the relevant KPMG work papers made in 2016 were immaterial, non-substantive, consistent with the relevant accounting rules, and/or nonexistent.  Such information would be discoverable under Rule 16 and *Brady*.

13. Communications between the government and KPMG or its counsel may contain discoverable information if, for example, KPMG described facts exculpatory as to Mr. Britt, or information that could be used to impeach Mr. Sweet.  Mr. Britt is entitled to all such information, and therefore the government should review its notes and materials for this purpose.

14. We believe that during the investigation of this case, KPMG provided to the government descriptions and details from witness interviews that KPMG had conducted, but did not

9



provide the interview memoranda themselves.  We understand that the government allowed KPMG to couch the description of facts conveyed to the government as "hypothetical facts": "KPMG Counsel has relayed the information or answers that they 'hypothetically' believe a particular witness would provide."  *See* July 21, 2017 Agent Affidavit in Support of Application for Search Warrants for Stored Electronic Communications, n. 2 (SDNY-00000001-SDNY-00000024).  Information regarding witness interviews provided to the government in this fashion was further described and relied upon by the government in search warrant affidavits among other things.  To the extent that the government's notes of these oral downloads from KPMG contain materials to which Mr. Britt is entitled under Rule 16, *Brady*, or *Giglio*, we ask that the government review its notes and comply with these obligations.  Further, presumably "hypothetical facts" are not statements under the Jencks Act, but rather are more fairly considered items material to preparing the defense under Rule 16(a)(1)(E)(i) and as such should be provided in discovery.

15. Based on our review of the discovery, information related to KPMG employee Dabie Tsai may be discoverable.  It appears that Mr. Sweet provided certain PCAOB information to Ms. Tsai and that Ms. Tsai did not believe there was anything wrong with Mr. Sweet doing so.  We assume that because this information was included in search warrant affidavits, the government has or at least had a different view.  We ask that the government review the information related to Ms. Tsai to determine whether any is discoverable to Mr. Britt as *Brady* or Rule 16 discovery.

16. We believe that certain other witnesses expressed to KPMG and/or the government the fact that they did not believe they or anyone else had violated the law, or had otherwise done anything wrong.  See, for example, Mr. Sweet's plea colloquy in Court on January 5, 2018, 21:19-22 ("The Court: When you committed these acts, did you know that they were illegal and in violation of the law?  The Defendant: I did not have an understanding of that at the time, your Honor, but I do understand that now.").  Such information is potentially exculpatory with respect to Mr. Britt and should be provided in discovery at this time.

17. We also believe we are entitled to certain impeachment materials at this time in order to consider whether motions to suppress evidence are appropriate.  Specifically, the July 21, 2017 warrant affidavit states at paragraph 35, n. 3 – "…in certain cases, the description of events attributed to a particular witness varies from, or is contradicted by, the account attributed to another witness."  The government was apparently aware of specific contradictory information when it obtained search warrants in this case.  The defense



needs that information at this stage in order to determine whether motions to suppress are appropriate. We therefore request this discovery forthwith, and in advance of the upcoming motions deadline.

This list is not exhaustive, and is likely incomplete since we do not yet have full access to the government's information.

From what we have seen, we are concerned that the government is not taking a sufficiently broad view of its discovery obligations, is indulging in an overly expansive view of what constitutes a Jencks Act statement, and will ultimately make an incomplete *Giglio* document production shortly before trial with no time for a correction. "Providing broad and early discovery often promotes the truth-seeking mission of the Department. . . . It also provides a margin of error in case the prosecutor's good faith determination of the scope of appropriate discovery is in error." U.S. Attorneys' Manual, 9-5.002(B)(3)(A).

We also believe certain materials have been withheld as Jencks statements or *Giglio* materials that should be disclosed now:

1. We believe the government is withholding interview memoranda and notes of interviews as Jencks Act materials that do not have to be produced at this time, but will be produced in advance of trial. If any such materials are not "statements" as defined by the Jencks Act (18 U.S.C. Section 3500(e)), we submit that they may constitute Rule 16(a)(1)(E)(i) materials and are therefore discoverable at this time. It is our understanding that SDNY discovery and disclosure policy recognizes that notes and interview memoranda typically do not constitute "statements" as defined by the Jencks Act ("made by said witness and signed or otherwise adopted or approved by him"). The government should review withheld materials with this in mind.

2. We understand from our review of the discovery provided to date that certain current and former PCAOB witnesses were interviewed by the government, and provided impeachment information against Mr. Sweet, including that he lied and failed to disclose that he was attempting to gather confidential information from them during lunches and after work drinks, for example. Mr. Britt is entitled to this impeachment information now as there are investigative steps that should be taken in light of this information. It is our understanding that SDNY discovery and disclosure policy instructs prosecutors to be alert to impeachment material that should be disclosed earlier in order for the defense to make effective use of it, for instance, to use the material to conduct its own investigation regarding the character of a witness or if the material references another potential witness

11



the defense may wish to contact.  We request that the government review withheld materials for this purpose as well.

3.  Based on our review of the discovery, we also believe that certain witnesses have described to the government and/or KPMG that Mr. Sweet was misleading KPMG employees by making it appear that he had insights about the PCAOB based on his deep expertise and experience at the PCAOB when in fact he had apparently instead obtained confidential PCAOB information from current and former PCAOB employees.  Mr. Britt is entitled to all such impeachment materials regarding Mr. Sweet, and because follow up investigation is called for, this information should be provided now.

4.  Based on our review of the discovery provided to date, it also appears that George Herrmann may have provided impeachment information related to Mr. Sweet.  In the July 25, 2017 Agent Affidavit in Support of Application for Search and Seizure Warrant, paras. 33(b)-(c), the government asserted that Mr. Sweet had lunch with Mr. Hermann and Mr. Whittle, and that during lunch, several inculpatory statements were made.  If Mr. Herrmann contradicted Mr. Sweet's recollection of the lunch, Mr. Herrmann's interview would constitute impeachment evidence against Mr. Sweet.  Mr. Britt is entitled to this information now as follow-up investigation is warranted.

5.  When Mr. Sweet was asked during his plea colloquy, "When you committed these acts, did you know that they were illegal and in violation of law?", Mr. Sweet answered, "I did not have an understanding of that at the time, your Honor, but I do understand that now." He later submitted a letter to the Court stating, "I am writing to confirm that when I willfully and knowingly, agreed and did obtain, share, and use confidential information from the PCAOB in order to affect inspection outcomes, I understood that I was agreeing to participate in a scheme to defraud the PCAOB, which I knew was wrongful." Information regarding Mr. Sweet's inconsistent statements is discoverable under *Giglio v. United States* as impeachment material.  Mr. Britt is also entitled to any evidence of government or defense counsel involvement in Mr. Sweet's decision to send a letter to the Court under Rule 16.



<u>**Attachment B**</u>

Pursuant to Fed. R. Crim. P. 7(f), and in order to adequately prepare for trial and to avoid surprise at trial, Mr. Britt requests particulars for the paragraphs in the indictment as indicated below.

| <u>Request No.</u> | Indictment Count & Paragraph | <u>Particulars Requested</u> |
|---|---|---|
| | **Count One** | |
| 1. | 3 (line 1) | Identify the "relevant accounting standards" |
| 2. | 6 (last sentence) | Identify the "other" factors |
| 3. | 11 | Identify the "regulatory, oversight, and enforcement functions" |
| 4. | 11 | Identify the "negative inspection results" |
| 5. | 11 | Identify the "various consequences" |
| 6. | 11 | Identify the "weaknesses" |
| 7. | 18(i) | Identify other former PCAOB personnel recruited and hired by KPMG |
| 8. | 27 (first sentence) | Identify the "outcome of PCAOB inspection results" |
| 9. | 27 (first sentence) | Identify the "oversight and regulatory functions" |
| 10. | 27 (second sentence) | Identify the "legal obligations" |
| 11. | 27 (second sentence) | Identify "KPMG's inspection results" |
| 12. | 28 | Identify the "others" |
| 13. | 29 | Identify the "others" |
| 14. | 30 | Identify the "Network Documents" |

13



| 15. | 30 (second sentence) | Identify the "other confidential documents" |
| 16. | 30 (third sentence) | Identify the "certain hard copy documents" |
| 17. | 30 (fourth sentence) | Identify the "other documents" |
| 18. | 31 | Identify the "other PCAOB personnel" |
| 19. | 32 (first sentence) | Identify the "others" |
| 20. | 32 | Identify the "Issuer" |
| 21. | 40(i) | Identify the one or more "engagement partner(s)" |
| 22. | 40(ii) | Identify the "certain KPMG partners" |
| 23. | 41 | Identify the "others" |
| 24. | 41 | Identify the "engagement partners" |
| 25. | 42(ii) | Identify the "PCAOB personnel" |
| 26. | 42(c) | Identify the "others" |
| 27. | 43 | Identify the "rate of success" |
| 28. | 44 | Identify the "KPMG personnel" |
| 29. | 45 | Identify the "PCAOB planning document" |
| 30. | 46 | Identify the "others" |
| 31. | 50(a) | Identify the "other KPMG personnel" |
| 32. | 50(b) | Identify the "particular audit" |
| 33. | 50(c) (first sentence) | Identify the "KPMG inspection" |
| 34. | 50(d) (first sentence) | Identify the "ongoing KPMG inspection" |



| | | |
|---|---|---|
| 35. | 50(d) (second sentence) | Identify the "PCAOB IT inspector" |
| 36. | 54 | Identify the "certain confidential PCAOB information" |
| 37. | 56 | Identify the "confidential PCAOB information" |
| | 57 | Identify the "particular PCAOB inspector" |
| 38. | 58(a) | Identify the "specific Issuer" |
| 39. | 58(b) | Identify the "particular Issuer" |
| 40. | 59 | Identify the "other matters" |
| 41. | 60 | Identify "other members of OCA" |
| 42. | 60 | Identify the "SEC's concerns about audit quality" |
| 43. | 60 | Identify the "audit quality issues" |
| 44. | 61 | Identify the "additional meetings" |
| 45. | 61 | Identify the members of "OCA" who attended these "additional meetings" |
| 46. | 61 | Identify the "KPMG personnel" |
| 47. | 62 | Identify the "others" |
| 48. | 68 | Identify the "additional individuals" |
| 49. | 72 | Identify the "applicable accounting standards" |
| 50. | 72(d) | Identify the "additional substantive audit work" |
| 51. | 72(e) | Identify the "additional audit work" |
| 52. | 72(e) | Identify the "applicable auditing standards" |
| 53. | 75(i) | Identify the "certain partners" |
| 54. | 75(ii) | Identify the "additional personnel" |
| 55. | 78 | Identify the "additional KPMG personnel" |



| 56. | 79 (first and second sentences) | Identify the "others" |
|---|---|---|
| 57. | 81 | Identify the "approximately 50 stock ticker symbols" |
| 58. | 81 | Identify the "areas of focus" |
| 59. | 81 | Identify the "other information" |
| 60. | 82 | Identify the "focus areas" |
| 61. | 83(a) | Identify the "engagement partners" |
| 62. | 83(b) | Identify the "focus areas" |
| 63. | 83(c) | Identify the "engagement partners" |
| 64. | 83(d) | Identify the "focus areas" |
| 65. | 83(d) | Identify the "other matters" |
| 66. | 83(e) | Identify the "focus areas" |
| 67. | 83(e) | Identify the "particular engagement" |
| 68. | 84 | Identify the "members of KPMG's Office of the General Counsel" |
| 69. | 88 | Identify the "OGC personnel" |
| 70. | 88 (first sentence) | Identify the "others" |
| 71. | 89 | Identify the "specified college football team" |
| 72. | 89 | Identify the "designated KPMG conference call number" |
| 73. | 91 | Identify the "confidential information from the PCAOB" |
| 74. | 91 | Identify the fraudulent statements or omissions contained in "fraudulently affect" |
| 75. | 91 | Identify the "PCAOB inspection outcomes" |
| 76. | 91 | Identify the "regulatory and enforcement functions" |

16



| | | |
|---|---|---|
| 77. | 91 | Identify the "lawful function of the SEC" |
| 78. | 92 | Identify the "other()" overt acts |
| 79. | 92(a), (b) & (c) | Identify the "confidential PCAOB information" |
| 80. | 92(d) | Identify the "others" |
| 81. | 92 (d) | Identify the "certain of KPMG's engagements" |
| 82. | 92(d), (f), (g) & (h) | Identify the "valuable confidential PCAOB information" |
| 83. | 92(h) | Identify the "others" |

**Count Two**

| | | |
|---|---|---|
| 84. | 94 & 95 | Identify the alleged intended victim(s) of the wire fraud conspiracy |
| 85. | 95 | Identify the "property" the obtaining of which was the alleged object of the wire fraud conspiracy |

**Count Three**

| | | |
|---|---|---|
| 86. | 97 | Identify the "valuable confidential information" the obtaining of which was the alleged object of the wire fraud |
| 87. | 97 | Identify the "documents" the obtaining of which was the alleged object of the wire fraud |
| 88. | 97 | Identify the "other duties" |

**Count Four**

| | | |
|---|---|---|
| 89. | 99 | Identify the "valuable confidential information" the obtaining of which was the alleged object of the wire fraud |
| 90. | 99 | Identify the "documents" the obtaining of which was the alleged object of the wire fraud |
| 91. | 99 | Identify the "other duties" |

**Count Five**

17



| 92. | 101 | Identify the "valuable confidential information" the obtaining of which was the alleged object of the wire fraud |
| 93. | 101 | Identify the "documents" the obtaining of which was the alleged object of the wire fraud |
| 94. | 101 | Identify the "other duties" |

**Forfeiture**

| 95. | 102 | Identify the "proceeds" traceable to the alleged commission of the offenses alleged in Counts Two, Three, Four, and Five |
| 96. | 102 | Identify the "property" that "constitutes or is derived from" the "proceeds" |
| 97. | 102 | Identify the "sum of money" representing "proceeds" "personally obtained" by David Britt |

98.     In addition, for Count One of the indictment (¶¶27, 90), please provide the names and addresses of all unnamed and unindicted alleged coconspirators known to the government.

99.     In addition, for Count Two of the indictment (¶¶27, 94), please provide the names and addresses of all unnamed and unindicted alleged coconspirators known to the government.

18