UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
UNITED STATES OF AMERICA

          -v-

DAVID MIDDENDORF,
THOMAS WHITTLE,
DAVID BRITT,
CYNTHIA HOLDER, and
JEFFREY WADA,
                       Defendants.
---------------------------------------------------------------

18-CR-36 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Defendants David Middendorf, Thomas Whittle, David Britt, Cynthia Holder, and Jeffrey Wada are charged in a five-count indictment with offenses relating to an alleged scheme to improve KPMG's performance on inspections conducted by the Public Company Accounting Oversight Board ("PCAOB") by passing confidential PCAOB information to select KPMG employees. (Dkt. No. 1 ("Indictment").) The Court assumes familiarity with the relevant background of the case, which was summarized in the Opinion and Order denying the Defendants' motions to dismiss the Indictment. (Dkt. No. 114.) Now before the Court are several motions seeking (1) a bill of particulars, and (2) to compel the disclosure of material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 16. (Dkt. Nos. 79, 85, 95, 98). The Court heard oral argument on the motions on August 1, 2018. For the reasons that follow, the motions are denied.

**I.      Motions for a Bill of Particulars**

Defendants filed three separate motions for a bill of particulars.[1]

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  As such, a "bill of particulars is 'required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Dames*, 380 F. Supp. 2d 270, 273–74 (S.D.N.Y. 2005) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).  But if the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as discovery, no bill of particulars is required.  *Bortnovsky*, 820 F.2d at 574.

After reviewing the Indictment and considering the arguments of the parties, the Court concludes that Defendants are not entitled to a bill of particulars.  The Indictment sufficiently advises the Defendants of the nature of the charges against them:  it describes with specificity the acts they allegedly committed and the nature of the conspiracy of which they are accused, and it explains (in language closely tracking that of the relevant statutes) the crimes alleged.  That is sufficient.

None of Defendants' arguments justifies a contrary conclusion.  First, Middendorf argues that Defendants are entitled to particulars regarding the alleged wire fraud in Counts Three and

---

[1]    Middendorf, Holder, and Britt each moved for a bill of particulars. (Dkt. Nos. 79, 85, 95.) Wada and Whittle joined those motions. (Dkt. No. 91; Dkt. No. 99 at 10; Dkt. No. 103.)

Five.[2]  Specifically, Middendorf contends that the Indictment fails to specify which wire transmission and false representations form the basis of the two counts.  (Dkt. No. 84 at 6–7.)

"To determine if a bill of particulars is necessary for the adequate preparation of a defense, the court may consider 'the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise available to the defendants.'"  *United States v. Chalmers*, 410 F. Supp. 2d 278, 283 (S.D.N.Y. 2006) (quoting *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y.1983)).  And where those circumstances adequately apprise defendants of the charges against them, the Government need not specifically "inform a defendant of all transmissions it will use to prove a defendant's guilt at trial in a bill of particulars."  *Id*. at 285.  Given that the Indictment delineates Defendants' scheme to defraud the PCAOB with reasonable specificity, and the Government has provided extensive discovery on Defendants' relevant conduct, no further detail is required.

Second, Holder argues that Defendants are entitled to particulars regarding the identities of the unindicted alleged co-conspirators.  (Dkt. No. 86 at 1–9.)

"There is no clear rule in the Second Circuit as to when a bill of particulars for unindicted co-conspirators should be granted."  *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009).  Accordingly, courts in this District have reached differing results when faced with such requests for particulars.  *See, e.g.*, *United States v. Calvente*, No. 12 Cr. 732, 2013 WL 4038952, at *1 (S.D.N.Y. July 26, 2013) (denying a request for particulars); *United States v. Miller*, No. 12 Cr. 0368, 2012 WL 4791992, at *4 (S.D.N.Y. Oct. 9, 2012) (same).  *But see, e.g.*, *Kahale*, 789 F. Supp. 2d at 374 (granting a request for particulars); *United States v. Nachamie*,

---

[2]  Middendorf originally moved for a bill of particulars as to Counts Two and Four as well (Dkt. No. 84 at 4), but during oral argument, his counsel withdrew the request as to those counts.

3

91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (same).  And "[t]he Second Circuit has upheld decisions [both] granting and denying requests for the identity of co-conspirators."  *Kahale*, 789 F. Supp. 2d at 372 (quoting *Chalmers*, 410 F. Supp. 2d at 286).

However, cases in which such a request is granted generally involve conspiracies with a large number of co-conspirators over a long period of time.  *See Kahale*, 789 F. Supp. 2d at 372 (granting a request where there were "four indicted defendants and an unknown number of unindicted individuals" over a period of five years); *Nachamie*, 91 F. Supp. 2d at 573 (granting a request where there were eight defendants and an unknown number of unindicted co-conspirators over a period of more than three years); *see generally Chalmers*, 410 F. Supp. 2d at 286 (collecting cases).

Here, the Indictment alleges a conspiracy lasting two years, and focuses on the conduct of six named co-conspirators.  The scope of the alleged conspiracy is limited to employees of two entities—KPMG and PCAOB.  And the Government has produced extensive discovery, documenting the conduct and interactions of the named co-conspirators.  Furthermore, the Government recognizes its obligation to give Defendants notice of unindicted co-conspirators' identities in advance of the deadline for motions *in limine*, and to provide material pursuant to 18 U.S.C. § 3500 in a timely manner.  In these circumstances, failure to disclose the identities of unindicted co-conspirators does not impair Defendants' ability to prepare their defense, and does not leave them vulnerable to surprise at trial.  Defendants' request for particulars as to unindicted conspirators' identities is denied.

Third, Holder also argues that Defendants are entitled to particulars regarding the "other duties" that Defendants allegedly breached, as described in Counts Four and Five of the Indictment.  (Dkt. No. 86 at 10.)  At argument, the Government indicated that it needed time to

work out internally the details of those "other duties," but stated that it would then disclose the "other duties" to Defendants. The Government's forthcoming disclosure may render moot the request for particulars on this point. It is therefore denied without prejudice to later renewal if necessary.

Finally, Britt argues that Defendants are entitled to particulars regarding a number of discrete items, including: (1) all instances of additional audit work the Government will rely on at trial; (2) the functions for which the SEC uses PCAOB inspection reports; (3) the particular May 2015 audit referenced in the Indictment (Indictment ¶ 50(b)–(d)); (4) two particular issuers identified in the Indictment (Indictment ¶ 58(a)–(b)); and (5) any confidential information, besides the inspection lists, that was misappropriated from the PCAOB. (Dkt. No. 96 at 20–22.)

Undoubtedly, the information Britt seeks—as well as the particulars sought by Middendorf and Holder—would be helpful to the Defendants. But the "ultimate test" for granting a bill of particulars is "whether the information sought is *necessary*, not whether it is helpful." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (emphasis added). Moreover, "[t]he Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed"—i.e., "information that would, in effect, give the defendant a preview of the Government's case before trial." *United States v. Triana–Mateus*, No. 98 Cr. 958, 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (citation omitted).

Here, the Indictment, supplemented by discovery, contains sufficient detail to apprise Defendants of the acts of which they are accused. As a result, a bill of particulars is not necessary to enable Defendants to prepare for trial in this case.

5

## II. Motions to Compel Disclosure of *Brady* Material and Discovery Requests

Defendants also move to compel the production of material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 16.[3]

Under *Brady*, the Government has an obligation to disclose to criminal defendants any material exculpatory information "in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). Rule 16 provides that, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" any documents, data, or objects in the government's possession, custody, or control that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i).

The Defendants seek the disclosure of five categories of material from the Government: (1) witness statements concerning knowledge of illegality and the non-substantive nature of changes made to work papers; (2) material from the files of the SEC and PCAOB; (3) other witness and attorney statements; (4) additional Rule 16 material; and (5) expert disclosures and *Giglio* material.

### A. Witness Statements Concerning Knowledge of Illegality, and the Nature of Changes to Work Papers

Defendants first seek disclosures relating to the opinions of witnesses that the procurement or use of confidential PCAOB information was not illegal (Dkt. No. 84 at 8–9; Dkt. No. 96 at 7–8; Dkt. No. 99 at 6–7), and that the changes made to the 2016 work papers were non-substantive. (Dkt. No. 96 at 5–6; Dkt. No. 99 at 7.)

---

[3] Middendorf, Britt, and Whittle filed three separate motions to compel disclosure of *Brady* material and discovery. (Dkt. Nos. 79, 95, 98.) Wada and Holder joined those motions as well. (Dkt. Nos. 86 at 1, 91, 103.)

As part of the alleged scheme, Defendants are charged with conspiring with Brian Sweet, a former PCAOB employee who moved to KPMG. During Sweet's guilty plea colloquy, he stated that he did not know at the time that his conduct was illegal. Defendants assert that Sweet's statement was exculpatory and should have been promptly produced, and they seek production of any notes or reports from the Government's meetings with Sweet. (Dkt. No. 84 at 8–9; Dkt. No. 99 at 6–7.)

Furthermore, on June 1, 2018, the Government sent Defendants a letter disclosing the names of nine individuals who had "indicated that they were aware, to varying extents, of Brian Sweet's and/or KPMG's possession of confidential PCAOB information concerning inspection targets and did not realize or think such conduct was criminal, or believed such conduct was okay because Sweet and/or others at KPMG had the information, or did not believe the information was confidential." (Dkt. No. 100-13 at 2–3.) Defendants assert that this disclosure is neither complete nor sufficiently specific, and they seek further disclosure of the substance of the nine individuals' statements. (Dkt. No. 99 at 6–7; Dkt. No. 96 at 6–8.) And Defendants further request the disclosure of any similar statements from other individuals demonstrating a lack of criminal intent. (Dkt. No. 84 at 9–10; Dkt. No. 96 at 8.)

Finally, in the June 1, 2018 letter, the Government also disclosed the names of four individuals who "expressed the view that changes made to audit work papers in 2016 were not substantive." (Dkt. No. 100-13 at 3.) Defendants request the production of the substance of individuals' opinions that changes to the 2016 audit papers were non-substantive. (Dkt. No. 96 at 5–6; Dkt. No. 99 at 7–8.))[4]

---

[4] Whittle also asserts that the Government should also be required to disclose which changes to the audit work papers it will rely on at trial, or to produce the complete 2016 audit work papers. (Dkt. No. 99 at 7–8.) But as the Government explained, it has disclosed all the

The Government responds that that it has satisfied its *Brady* obligation regarding these individuals' statements. (Dkt. No. 107 at 11–12.) The Government is correct. Knowledge of the identity of a potential witness, and the "the essential facts which would enable" a defendant "to call the witness and thus take advantage of any exculpatory testimony that he might furnish," is sufficient to discharge the Government's *Brady* obligation. *United States v. Stewart*, 513 F.2d 957, 960 (2d Cir. 1975). To the extent the statements of Sweet and the other individuals are potentially exculpatory, the Government has informed the Defendants of those witnesses' identities and the essential facts about which they could testify. And there is no reason to believe that the Government is withholding the identity of other individuals who made similar statements. *Brady* requires nothing more from the Government under these circumstances.

B.     **Material from the SEC and PCAOB**

Britt also moves the Court to compel the Government to search the files of the SEC and PCAOB for Rule 16 and *Brady* material, on the premise that the Government undertook joint investigations with those entities. (Dkt. No. 96 at 15–18.)

The prosecution's obligation to disclose *Brady* material extends to any material in the possession of any entity that has acted as an "arm of the prosecutor" in a given case. *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741 (S.D.N.Y. 2018) (quoting *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975)). In other words, where the prosecution "conducts a 'joint investigation' with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence." *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012). A number

---

work papers in its possession. (Dkt. No. 107 at 13.) And for the reasons explained above, the Defendants are not entitled to particulars on this point.

of factors are relevant in determining whether the prosecution conducted a "joint investigation," including whether the other agency: (1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings. *See Blaszczak*, 308 F. Supp. 3d at 741–42; *see also United States v. Martoma*, 990 F. Supp. 2d 458, 461 (S.D.N.Y. 2014) (relying on the joint conduct of interviews, exchange of documents, coordination of deposition efforts, and communications regarding the status of fact-gathering to find a joint investigation).

The Court concludes that no joint investigation between the Government and the PCAOB took place here. No PCAOB representatives were present at any witness interviews conducted by the Government, nor was the PCAOB involved in developing any prosecutorial strategy.

The SEC presents a closer question. The Government and the SEC conducted joint witness interviews. (Dkt. No. 107 at 15–16.) And Defendants point to the fact that the entities filed charges against the same group of defendants, on the same day, as circumstantial evidence of strategic coordination. (Dkt. No. 113 at 6–7.) But none of the other factors deemed relevant in *Blaszczak* are present here: according to the Government's representations during argument on these motions, the SEC was not involved in its grand jury presentation, has not reviewed documents gathered by the Government or shared the fruits of its investigation with the Government, and did not participate in the overall development of prosecutorial strategy. And beyond conducting joint interviews, the Government and SEC have not coordinated their separate fact-finding efforts. The Court therefore concludes that the Government and SEC did not conduct a "joint investigation," and as such the Government is not obligated to search the SEC's files for Rule 16 or *Brady* material.

### C. Witness and Attorney Statements

Defendants have further requested the disclosure under Rule 16 or *Brady* of the content of other witness statements, including communications with employees of the SEC, PCAOB, and KPMG, and attorney proffers. (Dkt. No. 96 at 8–10; Dkt. No. 99 at 8–9.)

The Government responds that it has satisfied its *Brady* obligations up to this point (Dkt. No. 107 at 9), and will provide witness statements under 18 U.S.C. § 3500 sufficiently in advance of trial, consistent with the precedents of courts in this Circuit. (*Id*. at 6 n.3, 13–14). The Court agrees that no further disclosure of the content of such witness statements is required at this point.

### D. Additional Rule 16 Material

Britt also seeks to compel the disclosure of the following categories of information: (1) evidence showing Britt's lack of involvement in obtaining the PCAOB inspection lists; (2) discovery provided to other defendants; (3) evidence showing the resources PCAOB expends on its inspections; (4) evidence of KPMG's poor performance in PCAOB inspections before the alleged fraud occurred; (5) evidence of SEC's views on the audit inspection process; (6) evidence of Defendants' intent to defraud; and (7) the contents of Britt's cellphone. (Dkt. No. 96 at 10–14.)

The Government responds that it has "already produced all Rule 16 material in its possession that could bear on these points." (Dkt. No. 107 at 14.) With nothing in Britt's submissions to raise serious doubts about the accuracy of the Government's representations, the Court accepts those representations as sufficient for now.

### E. Expert Disclosures and *Giglio* Material

Britt also requests that the Government produce a summary of the expert testimony it plans to elicit at trial, and that the Government review impeachment material for early disclosure.

(Dkt. No. 96 at 14, 18–19.)  Under *Giglio v. United States*, 405 U.S. 150, 154 (1972), information that could be used to impeach government witnesses must be disclosed "in time for its effective use at trial." *Coppa*, 267 F.3d at 146.  And under Rule 16(a)(1)(G), upon defendant's request, the Government must provide in advance of trial "a written summary" of any expert testimony the Government intends to use.  Fed. R. Crim. P. 16(a)(1)(G).  Here, the Government promises to provide expert notice and *Giglio* material sufficiently in advance of trial to be effectively useful to Defendants.  (Dkt. No. 107 at 9, 14–15.)  Particularly given that the Court has granted the Defendants' requests to adjourn the trial to February 11, 2019, the request to compel the disclosure of expert testimony and *Giglio* material at this time is premature.

**III.    Conclusion**

For the foregoing reasons, Defendants' motions for a bill of particulars and motions to compel disclosure of *Brady* material and Rule 16 discovery are DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 79, 85, 95, 98, and 103.

SO ORDERED.

Dated: August 17, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge

11