# PETRILLO KLEIN & BOXER LLP

655 Third Avenue
22nd Floor
New York, NY 10017
Telephone: (212) 370-0330
www.pkbllp.com

Amy Lester
Direct Dial: (646) 930-1066
Cell:          (917) 273-9480
alester@pkbllp.com

March 5, 2019

**By ECF**

The Honorable J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square, Room 2101
New York, NY  10007

    Re:    *United States v. David Middendorf, et al.*, 18 Cr. 36 (JPO)

Dear Judge Oetken:

    We write in further support of our objections to the Court's draft jury charge on the wire fraud charges in this case.  As both parties' proposed requests to charge reflect, s*ee* Dkt. 176 at 19; Dkt. 197 at 25, the Indictment plainly alleges an embezzlement theory of fraud in charging "a scheme to defraud the PCAOB by misappropriating, embezzling, obtaining, sharing, and using the PCAOB's property . . . in breach of duties of confidentiality and other duties owed by former or current PCAOB employees to the PCAOB."  Indictment ¶¶ 97, 99, 101.  Accordingly, the jury must be instructed that a defendant cannot "participate," "devise," "aid and abet," or "conspire" to engage in a scheme to defraud the PCAOB of its property if the embezzlement was already accomplished by the time the defendant learned of it.

    Earlier today, the Court stated that it saw the charges in this case as alleging a "*Carpenter*" theory of fraud, not an embezzlement theory of fraud:

> THE COURT: I have thought a lot about this. I think this is a *Carpenter* confidential information case. I don't think it collapses to embezzlement. I don't think that a wire fraud of the type charged here just becomes an embezzlement charge, and therefore I'm not planning to put in all that embezzlement stuff, although we can talk about it.

Tr. (3/5/19) 2999:24-3000:4.  Respectfully, the Court is mistaken to draw a distinction between a "*Carpenter*" case and an "embezzlement" case because *Carpenter is* an

March 5, 2019
Page 2

embezzlement case. The *Carpenter* opinion, in rejecting the defendants' argument that the *Wall Street Journal* reporter's breach of his duty of confidentiality was not fraudulent, explained that "[t]he concept of 'fraud' *includes the act of embezzlement*, which is the 'fraudulent appropriation to one own's use of the money or goods entrusted to one's care by another.'" *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (emphasis added) (quoting *Grin v. Shine*, 187 U.S. 181, 189 (1902)). The Supreme Court has since reaffirmed that *Carpenter* should be understood as nothing more than a "species" of fraud by embezzlement. *See United States v. O'Hagan*, 521 U.S. 642, 654 (1997) ("The undisclosed misappropriation of [a company's] confidential information, in violation of a fiduciary duty, the Court said in *Carpenter*, constitutes fraud *akin to embezzlement*—'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.'" (emphasis added) (quoting *Carpenter*, 484 U.S. at 27)).[1]

In this case, the terms misappropriation, embezzlement, and a "*Carpenter*" theory of fraud should be understood as synonymous and interchangeable. "Misappropriation" as used in the fraud case law does not mean merely "obtaining" property wrongly; it is a shorthand used to describe the *fraudulent* misappropriation of money property in violation of a *duty* of trust and confidence that the misappropriator owes to the owner of the information. *See O'Hagan*, 521 U.S. at 653 ("We observe, first, that misappropriators, as the Government describes them, deal in deception. A fiduciary who pretends loyalty to the principal while secretly converting the principal's information for personal gain, 'dupes' or defrauds the principal.") (internal quotation marks and citation omitted).

The act of *fraud*, that is to say, the act of deception, is not the *taking* of the property; it a fraud of *omission* that the embezzler commits when he violates a duty of trust and confidence to his principal by converting its property with the intent to use it for his personal gain without *disclosing* his breach of that duty. *See O'Hagan*, 521 U.S. at 643 ("Because the deception essential to the misappropriation theory involves feigning fidelity to the source of information, if the fiduciary discloses to the source that he plans to trade on

---

[1] An "embezzlement" theory of fraud charged under the wire fraud statute and an "embezzlement" theory charged under a different fraud statute do not differ in the essential nature of the fraudulent scheme (under both, it is common-law embezzlement); they differ only in the means or object of the scheme to defraud. So, for example, while a wire fraud embezzlement scheme requires a use of the wires in furtherance of a scheme to obtain money or property, the embezzlement scheme addressed in *United States v. Sampson*, 898 F.3d 270 (2d Cir. 2018), was charged under 18 U.S.C. § 666(a)(1)(A), which requires that the object of the scheme be defrauding at least $5000 in property from an organization or government agency that receives at least $10,000 in federal funds.

March 5, 2019
Page 3

the nonpublic information, there is no 'deceptive device'…."); *Carpenter*, 484 U.S. at 27-28 (finding *Wall Street Journal* employee's promise not to reveal prepublication information "became a sham," and that he "appropriat[ed] its confidential information for his own use, all while pretending to perform his duty of safeguarding it"); *Sampson*, 898 F.3d at 277-78 & n.5 (holding that "conversion" does not become embezzlement until the fiduciary forms the "intent to defraud," i.e., "a specific intent to deceive or cheat").

If there is no breach of a duty or other misrepresentation, then there can be no fraud, by wires or otherwise. A fraud is not established, as the has Court suggested, merely through the "depriv[ation] of [a] right to exclusive use of confidential information." Tr. (3/5/19) 3000:5-6. Rather, the deprivation of the property interest must be executed through fraudulent means. *See United States v. Finnerty*, 533 F.3d 143, 148-49 (2d Cir. 2008) (defendant could not be convicted of fraud by stealing information from his trading customers where "the government undertook to prove no more than garden variety conversion" and did not prove a misrepresentation or the breach of a duty).

But no defendant can "devise," "participate" in, "aid and abet," or "conspire" to agree to a scheme to defraud *after* that act of fraud—here, embezzlement—is already complete. *See United States v. Freeman*, 498 F.2d 569, 575 (2d Cir. 1974) (reversing conviction of defendant as she could not be convicted of narcotics conspiracy or substantive crime for transporting money after narcotics transaction had been completed); *Bollenbach v. United States*, 326 U.S. 607, 611 (1946) (holding defendant could not be convicted as principal or aider-and-abettor for "fencing" stolen property after elements of crime were complete); *Rosemond v. United States*, 134 S. Ct. 1240, 1249 (2014) (holding defendant could not be found guilty of aiding-and-abetting the use of a gun in furtherance of a drug crime where did not know in advance that his accomplice had a gun); *United States v. Hamilton*, 334 F.3d 170, 180 (2d Cir. 2003) ("A person cannot be found guilty of aiding and abetting a crime that already has been committed.") (citation omitted); *United States v. Shulman*, 624 F.2d 384, 387 (2d Cir. 1980).[2]

Nothing in *Carpenter* speaks to, let alone contradicts, these legal principles. In *Carpenter*, all of the defendants agreed *in advance* that the *Wall Street Journal* reporter—Mr. Winans—would embezzle the *Journal*'s confidential information by sharing it with his

---

[2] The Second Circuit has squarely held that the fraudulent act of embezzlement is "complete" once a fiduciary converts property to his own use with the intent to defraud the principal. *Sampson*, 898 F.3d at 277-78; *accord United States v. Czubinski*, 106 F.3d 1069, 1074-76 (1st Cir. 1997) (holding defendant could not be convicted of wire fraud scheme to defraud IRS of property interest in confidential information until and unless he formed an intent to deprive IRS of property, thereby completing the fraud).

March 5, 2019
Page 4

coconspirators so that they could trade on it. *See Carpenter*, 484 U.S. at 23 (noting Mr. Winans "entered into a scheme in October 1983 with Peter Brant and petitioner Felis … to give them advance information as to the timing and contents of the 'Heard' column," and that the conspirators agreed that "[p]rofits were to be shared … and that the scheme would not affect the journalistic purity of the 'Heard' column"); *see also* Ex. A (Brief for the United States at 5-6, *Carpenter*, No. 86-422 (U.S. May 29, 1987)); Ex. B (Brief for Petitioners at 4-5, *Carpenter*, No. 86-422 (U.S. Feb. 28, 1987)). Accordingly, nobody in *Carpenter* challenged when the scheme to defraud by embezzlement *ended* because they were all in on it *from the beginning*. Moreover, as the Court knows, because *Carpenter* was a bench trial, there was no need for the trial court to parse the details of how to instruct a jury on what constitutes fraud—especially who can devise or participate in an alleged scheme to defraud and when that scheme ends. Here, however, these issues are critical to the defense's theory of the case. The jury must be instructed appropriately such that they can separate what constitutes participating in the charged scheme to engage in *fraud* from mere after-the-fact use of already-stolen property.

Accordingly, for the reasons stated in Mr. Middendorf's proposed requests to charge and our letter to the Court dated March 4, 2019, the jury must be instructed that a defendant in Mr. Middendorf's shoes cannot be convicted of "fraud"—as a principal, aider-and-abettor, or conspirator—if he did not learn of a plan to engage in a fraudulent act to obtain the PCAOB's property, here, that is, to embezzle the PCAOB's confidential information, until after the fiduciary (the current or former PCAOB employee) had already completed the act of fraud by converting the PCAOB's property with the intent to use it for his personal gain. *See* Dkt. 197 at 27-28, 37-38; *accord* Dkt. 268 at 7-10, 12.

Respectfully submitted,

/s/
Amy Lester
Nelson A. Boxer
Alexandra R. Clark
Noam Greenspan
Petrillo Klein & Boxer LLP
    - and -
Gregory S. Bruch
Khiran Sidhu
Bruch Hanna LLP

*Counsel for David Middendorf*